UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CAROLYN DEE KING,<br>    Plaintiff, | :<br>:<br>: |
| v. | :    CIVIL ACTION NO.<br>:    3:06-cv-1703 (VLB) |
| M. JODI RELL, Governor,<br>State of Connecticut, et al.,<br>    Defendants. | :<br>:<br>:    March 20, 2008 |

## MEMORANDUM OF DECISION AND ORDER GRANTING THE GOVERNOR'S MOTION TO DISMISS [Doc. #50]

Pending before the court is the Governor's motion to dismiss all claims against her. The plaintiff, Carolyn Dee King, brings this case against the defendant, M. Jodi Rell, Governor of Connecticut ("the Governor"), in her official capacity, among others, for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and negligent infliction of emotional distress. The Governor moves to dismiss for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). For the reasons hereinafter set forth, the motion to dismiss is GRANTED.

### I. Facts

The following facts alleged in the complaint are taken as true for purposes of this motion. King is the daughter of Daniel Gross, the now deceased original plaintiff in this action, and proceeds as administratrix of Gross's estate. Gross

1

was a citizen of New York.  On June 28, 2005, Gross, eighty six years old at the time, traveled to King's home in Waterbury, Connecticut, for a brief convalescence following a leg infection.  On August 8, 2005, Gross was admitted to Waterbury Hospital to treat lingering problems with his leg.  On August 17, 2005, a hospital employee filed an application for appointment of a conservator for Gross with the Waterbury Probate Court ("Probate Court").  On August 25, 2005, the Probate Court, appointed an attorney for Gross and scheduled a hearing for September 1, 2005.  Following the hearing, the Probate Court declared Gross incompetent to handle his affairs by way of dementia and appointed him a conservator.

Between September 1, 2005, and June 27, 2006, the conservator had Gross confined to a nursing home, used his assets to cover various costs of living and offered his home for sale.  Gross consistently asserted that he did not have dementia, did not require a conservator and did not wish to remain in a nursing home.  The Probate Court proceedings were littered with procedural irregularities committed by the Probate Court, the conservator and Gross's Probate Court appointed attorney.

On June 9, 2006, Gross filed a writ of habeas corpus in Waterbury Superior Court.  On June 27, 2006, the Superior Court (*Agati, J*) issued a stay of all Probate Court proceedings.  On July 12, 2006, the Superior Court (*Gormley, J*) found that the Probate Court improperly asserted jurisdiction over Gross and declared the conservatorship null and void.  Gross was released from the nursing home and

returned to New York.

On October 26, 2006, Gross initiated this lawsuit against the Governor and others. [Doc. #1] On January 30, 2007, Gross amended his complaint, alleging that the Probate Court's conduct violates the ADA and that the Governor was responsible for such actions. Gross's ADA claim seeks two forms of relief: 1) an injunction requiring that the Governor reform the Probate Court in such a way to comply with the ADA and ordering the state of Connecticut to appoint a monitor to assure future Probate Court compliance; and 2) monetary damages for the injuries he suffered as a result of the Probate Court's conduct. He also asserted a claim of negligent infliction of emotional distress.

The Governor filed the current motion to dismiss on March 28, 2007. [Doc. #50] Gross died on November 6, 2007, after this motion was fully briefed. [Doc. #96] On January 18, 2008, King was appointed administratrix of Gross's estate. [Doc. #96] On February 27, 2008, King substituted for Gross as the plaintiff in this case. [Doc. #97]

## II. Standing

The Governor moves to dismiss the portions of King's complaint that seek injunctive relief under the ADA, namely an order compelling the governor to bring the Probate Court into compliance with the ADA and a court appointed monitor to oversee the conversion, for lack of standing pursuant to Rule 12(b)(1). As standing implicates the subject matter jurisdiction of this court, that issue will be considered first.

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A motion to dismiss for lack of subject matter jurisdiction is the appropriate means to challenge standing as standing concerns whether an application for relief presents a case or controversy upon which a federal court can exercise its Article III powers. Auerbach v. Board of Educ. of the Harborfields, 136 F.3d 104, 108 (2d Cir. 1998). In considering a motion to dismiss for lack of subject matter jurisdiction, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004). To successfully defend against a Rule 12(b)(1) motion to dismiss, the plaintiff must establish subject matter jurisdiction by a preponderance of the evidence. Makarova, 201 F.3d at 113.

In briefing this motion, the Governor argued that Gross did not have standing to seek injunctive relief because there was no likelihood he would suffer a future harm. "In order to meet the constitutional minimum of standing to seek injunctive relief, [a plaintiff] must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983)). "Abstract injury is not enough; rather, the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." Id. (internal quotation

omitted). "In doing this, he 'cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he will be injured in the future.'" Id. (quoting Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998)).

After the briefing of this motion closed, Gross died. At the risk of stating the obvious, Gross is no longer in danger of suffering a future harm and cannot, on his own, assert a claim for injunctive relief. Thus any claim for injunctive relief based on Gross's standing must be dismissed. See Blake v. Southcoast Health Sys., 145 F. Supp. 2d 126, 132-137 (D. Mass. 2001) (ADA claim for injunctive relief moot upon death of plaintiff); Goodwin v. C.N.J., Inc., 436 F.3d 44, 48-49 (1st Cir. 2006) (same, citing cases from Third, Fifth and Tenth Circuits); Kahn v. NYU Med. Ctr., 2007 U.S. Dist. Lexis 49840 at *16-19 (S.D.N.Y. Jul. 10, 2007) (same); Boucher v. Syracuse Univ., 164 F.3d 113, 117-118 (2d Cir. 1999) (actions occurring after complaint filed that obviate injunctive relief sought render claim moot). King also lacks standing to assert a claim for injunctive relief in Gross's stead as there are no allegations that she is exposed to any risk of suffering the same type of injury as Gross in the immediate future. See Kahn, 2007 U.S. Dist. Lexis 49840 at *19; Goodwin, 436 F.3d at 48; Blake, 145 F. Supp. 2d at 137.

The ADA claim must be dismissed to the extent it seeks injunctive relief. Neither King nor Gross is in danger of suffering future harm as alleged in the complaint and do not have standing. The motion to dismiss for lack of standing is GRANTED.

### III. Failure to State a Claim

The fact that King does not have standing to assert a claim for injunctive relief under the ADA does not itself preclude her claims for damages under the ADA and common law, as those claims are meant to redress past injuries suffered. The Governor moves to dismiss the ADA and emotional distress claims for failure to state a claim pursuant to Rule 12(b)(6) because, among other arguments, she has and cannot have any involvement in the workings of the Probate Courts and is not a proper defendant in this lawsuit.

"In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (internal quotation omitted). The pleading shall not be dismissed merely because recovery seems remote or unlikely. Bernheim, 79 F.3d at 321.

The Governor had no direct involvement in the situation befalling Gross. King concedes she is being sued in her official capacity as the figurehead of the state government. The Governor's official duties do not extend into the judicial branch of Connecticut's government. Therein lies the complaint's fatal flaw.

The complaint alleges that the daily workings of the Probate Court violate

the ADA. Connecticut's constitution explicitly provides: "The powers of government shall be divided into three distinct departments, and each of them confided to a separate magistracy, to wit, those which are legislative, to one; those which are executive, to another; and those which are judicial, to another." Conn. Const. Amend. Art. XVIII. The Probate Court lies within the Judicial Branch of government, over which the Governor (nor the General Assembly) exercises no authority or control. See Hartford v. Larrabee Fund Asso., 161 Conn. 312 (Conn. 1971) (activities reserved for Probate Court are within exclusive province of Judicial Branch). To the extent that the complaint relies on the actions of the Probate Court for its ADA and emotional distress claims, the Governor is an improper defendant and cannot be held liable for the actions of those not under her authority or control.

Titles 45 and 45a of the Connecticut General Statutes govern the Probate Court. Although the Probate Court is within the judicial branch, the state legislature is the only entity with the authority to proscribe the powers and jurisdiction of the Probate Court. See Conn. Const. Amend. Art. XX, Sec. 1 ("The judicial power of the state shall be vested in a supreme court, an appellate court, a superior court, and such lower courts as the general assembly shall, from time to time, ordain and establish. The powers and jurisdiction of these courts shall be defined by law."); see also Conn. Const. Art. III, Sec. 1 (vesting the legislative branch with exclusive authority to pass legislation); Conn. Const. Art. IV, Sec. 15 (executive may only sign bill proposed by legislature or veto bill; veto may be

7

overridden by two-thirds majority of both houses).  To the extent that the complaint basis its ADA and emotional distress claims against the Governor on the structure of the Probate Court, those claims also must fail.  The Governor is an improper party for such claims as she has no direct control over the creation or continuance of the Probate Court, its powers nor its procedures.

Gross further asserts that the Governor breached a duty under Connecticut General Statutes § 17b-337, and had she upheld that duty the Probate Court system would comply with the ADA.  That statute created a Long-Term Care Planning Committee to discuss long-term care issues within the state.  Conn. Gen. Stat. § 17b-337(a).  The statute further mandates that the committee occasionally reduce its discussions to recommendations, and submit such recommendations to the legislature.  Conn. Gen. Stat. § 17b-337(d).  The complaint alleges that the committee has not made adequate recommendations to address the improper conduct of the Probate Court and that any recommendations that have been made have not been adequately implemented.

These allegations also do not properly reach the Governor.  First, the statute spell's out the committee's membership.  Conn. Gen. Stat. § 17b-337(c).  The Governor is neither a member nor does she have the statutory authority to appoint any member.  Id.  The power to appoint the committee's members is explicitly granted to others by the statute.  The Governor does not maintain control over the committee.  Further, any recommendations made by the committee are presented to the legislature and not the Governor.  Conn. Gen.

Stat. § 17b-337(d); see also Conn. Gen. Stat. § 11-4a. The Governor does not have the authority to act on the recommendations of the committee without direction from the legislature. As discussed above, the Probate Court is governed by statutes enacted by the legislature and not the Governor. The Governor is not a proper defendant for the alleged breach of duty under section 17b-337.

Finally, Gross asserts that the Governor can be sued based on her general obligations as the chief executive of the state. This argument must also fail. A plaintiff may not use the general duty of fidelity in the execution of the law to state a claim against the Governor in the absence of specific facts that tie the Governor to the wrongs the plaintiff suffered. See Warden v. Pataki, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999); Romeu v. Cohen, 121 F. Supp. 2d 264, 272 (S.D.N.Y. 2000); Wang v. Pataki, 164 F. Supp. 2d 406, 410 (S.D.N.Y. 2001); Maloney v. Cuomo, 470 F. Supp. 2d 205, 211 (E.D.N.Y. 2007).

King's ADA and emotional distress claims fail to state a claim upon which relief can be granted and must be dismissed. The complaint does not allege any facts that can be linked to the Governor. She does not assert any legal theories under which the Governor could be held responsible for the actions of the Probate Court, the Long-Term Care Planning Committee, or the legislature. King could conceivably bring an action against the Judicial Branch, the Probate Court, the legislature, the Long-Term Care Planning Committee or its individual members, or attempt to have the statutory scheme governing the Probate Court

declared unconstitutional.[1] She could also petition the legislature to prospectively reform the Probate Court system through legislative action. The Governor is not a proper defendant and has no power or responsibility to address the alleged wrongs Gross suffered, and the motion to dismiss must be GRANTED.[2]

## IV. Conclusion

Based on the above reasons, the Governor's motion to dismiss is GRANTED. Neither Gross nor King has standing to bring an action for injunctive relief. The Governor does not have authority over or responsibility for the wrongs alleged in the complaint and is an improper defendant.

The clerk shall terminate the Governor as a party to this action.

IT IS SO ORDERED.

/s/

Vanessa L. Bryant

United States District Judge

Dated at Hartford, Connecticut: March 20, 2008.

---

[1] The court does not speak to the merits of such actions and this order should not be read as a recommendation to bring any additional lawsuits.

[2] The court also finds that the claim for money damages as compensation for any negligent infliction of emotional distress is barred by the Eleventh Amendment. See Alungbe v. Bd. of Trs., 283 F. Supp. 2d 674, 688 (D. Conn. 2003).