## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CAROLYN DEE KING,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:06-cv-1703 (VLB)** |
| **M. JODI RELL, Governor,** | : | |
| **State of Connecticut, et al.,** | : | |
| **Defendants.** | : | **March 24, 2008** |

<u>**MEMORANDUM OF DECISION AND ORDER GRANTING KATHLEEN DONOVAN'S MOTION TO DISMISS, [Doc. #39] GRANTING IN PART AND DENYING IN PART GROVE MANOR NURSING HOME'S MOTION TO DISMISS, [DOC. #42] AND GRANTING JONATHAN NEWMAN'S MOTION TO DISMISS [DOC. #44]**</u>

Pending before the court are three motions to dismiss based on the theory of quasi-judicial immunity. The plaintiff, Carolyn Dee King, brings this case against the moving defendants, Kathleen Donovan, Grove Manor Nursing Home ("Grove Manor"), and Jonathan Newman, among others, alleging violations of federal statutes, the United States Constitution, and Connecticut common law. The defendants move to dismiss all claims against them for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons hereinafter set forth, Donovan and Newman's motions to dismiss are GRANTED. Grove Manor's motion to dismiss is GRANTED in part, and DENIED in part, as hereinafter ordered.

### II. Facts

The following facts alleged in the complaint are taken as true for purposes

of this motion.  King is the daughter of Daniel Gross, the now deceased original plaintiff in this action, and proceeds as administratrix of Gross's estate.  Gross, a citizen of New York, three days after his discharge from a New York hospital on June 25, 2005, traveled to King's home in Waterbury, Connecticut, for a brief convalescence.  On August 8, 2005, Gross was admitted to Waterbury Hospital to treat lingering problems with his recovery.  On August 17, 2005, a hospital employee filed an application for appointment of a conservator for Gross with the Waterbury Probate Court ("Probate Court").  On August 25, 2005, Probate Court Judge Thomas Brunnock appointed Newman as counsel for gross and noticed a hearing for September 1, 2005.  The notice stated the it should be served on Gross by August 24, 2005.  The notice was served on the hospital employee that applied for appointment of a conservator on August 30, 2005.

Newman interviewed Gross prior to the September 1, 2005, hearing and filed a report with the Probate Court.  Gross informed Newman that he was opposed to a conservatorship.  The report suggested Gross could benefit from a conservator due to mental and physical disabilities, and that Newman knew of no legal impediment to a conservatorship.  On September 1, 2005, Judge Brunnock declared Gross incapable of managing his affairs or caring for himself by way of dementia pursuant to Connecticut General Statutes § 45a-644 and appointed Donovan as conservator.  Judge Brunnock did not require Donovan to post a bond.

Donovan had Gross placed in Grove Manor.  She listed his home in New

York for sale, changed the locks on his house and had his mail redirected from New York to Connecticut. On November 3, 2005, Judge Brunnock issued an order, at Donovan's request, preventing Gross from visiting King outside of Grove Manor.

On April 17, 2006, Gross visited friends in New York. While in New York, he suffered chest pains and was admitted to a local hospital. On April 18, 2006, Donovan faxed a document to Judge Brunnock notifying him of Gross's situation and that she was working with Social Services to coordinate Gross's return to Connecticut. A treating physician told Donovan that Gross should remain in the hospital. Donovan had Gross transported back to Grove Manor in an ambulance. Over the next few weeks, Donovan completed Probate Court forms requesting disbursement of approximately $35,000 of Gross's assets to cover his living expenses and fees, and submitted the forms to Judge Brunnock.

On May 1, 2006, Judge Brunnock, at the request of Donovan, further restricted King's visitation rights to a one hour visit per day, and prevented her use of recording devices within Grove Manor. Grove Manor enforced these restrictions. On May 5, 2006, Judge Brunnock ordered Gross's home be offered for sale.

While at Grove Manor, Gross shared a room with a man who had previously pleaded guilty to and was convicted of robbery in a crime that involved two deaths. The roommate struck Gross. Grove Manor removed the roommate temporarily, but then returned him to Gross's room. The roommate continued to

intimidate Gross.  Donovan had knowledge of Gross's living situation.[1]

No one appealed any of the Probate Court's orders or any of Donovan, Newman or Grove Manor's actions or decisions.  On June 9, 2006, Gross filed a writ of <u>habeas corpus</u> in Waterbury Superior Court.  On June 27, 2006, the Superior Court (*Agati, J*) issued a stay of all Probate Court proceedings.  On July 12, 2006, the Superior Court (*Gormley, J*) found that the Probate Court improperly asserted jurisdiction over Gross and declared the conservatorship null and void. Gross was released from the nursing home and returned to New York.

## II.  Procedural Posture

On October 26, 2006, Gross initiated this lawsuit.  [Doc. #1]  On January 30, 2007, Gross amended his complaint, asserting claims against Donovan, Newman, Grove Manor, Judge Brunnock, Maggie Ewald, former Long-Term Care Ombudsperson for the Connecticut Department of Social Services, and M. Jodi Rell, Governor of Connecticut.  [Doc. #29]  The claims against Donovan include violation of 42 U.S.C. § 1985, violation of Gross's due process rights pursuant to 42 U.S.C. § 1983, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of fiduciary duty, false arrest, assault and false imprisonment.  Gross alleges that Grove Manor violated 42 U.S.C. § 1985, 42 U.S.C. § 1396r, part of the Omnibus Budget Reconciliation Act of 1989 ("OBRA"), and the Connecticut Patient's Bill of Rights, Connecticut General Statutes § 19a-

---

[1]The allegations involving Gross's roommate are made "on information and belief."  The other allegations in the complaint are pled as known facts.

550, as well as claims for negligent and intentional infliction of emotional distress.  Against Newman, Gross asserts claims for violation of 42 U.S.C. § 1985, violation of Gross's due process rights pursuant to 42 U.S.C. § 1983, intentional infliction of emotional distress, negligent infliction of emotional distress, and legal malpractice.

Donovan filed her motion to dismiss on February 28, 2007.  [Doc. #39] Newman and Grove Manor filed their motions to dismiss on March 14, 2007. [Docs. #42, 44]  The court held oral arguments on Donovan's motion on April 10 and April 12, 2007.  [Docs. #72, 73]  On April 20, 2007, the court (*Thompson, J*) granted Judge Brunnock's motion to dismiss based on his absolute judicial immunity from suit.  <u>See</u> <u>Gross v. Rell</u>, 485 F. Supp. 2d 72 (D. Conn. 2007).  [Doc. #62]  The case was transferred before the undersigned on May 5, 2007.  [Doc. #77]

Gross died on November 6, 2007, after these motions were fully briefed. [Doc. #96]  On January 18, 2008, King was appointed administratrix of Gross's estate.  [Doc. #96]  On February 27, 2008, King substituted for Gross as the plaintiff in this case.  [Doc. #97]

### III.  Standard

"In reviewing a Rule 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff."  <u>Bernheim v. Litt</u>, 79 F.3d 318, 321 (2d Cir. 1996).  "A court may dismiss a complaint only if it is clear that no relief could be granted under

any set of facts that could be proved consistent with the allegations." <u>Hishon v.</u>
<u>King & Spalding</u>, 467 U.S. 69, 73 (1984).

"The issue is not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claims." <u>Villager Pond, Inc. v.</u>
<u>Town of Darien</u>, 56 F.3d 375, 378 (2d Cir. 1995) (internal quotation omitted). The
pleading shall not be dismissed merely because recovery seems remote or
unlikely. <u>Bernheim</u>, 79 F.3d at 321.

In deciding a motion to dismiss, the court may consider "only the facts
alleged in the pleadings, documents attached as exhibits or incorporated by
reference in the pleadings and matters of which judicial notice may be taken."
<u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).

### IV. Discussion

### A. Judicial Immunity

Many of the arguments asserted by Gross and the defendants concerning
the current motions either reiterate or incorporate arguments advanced in Judge
Brunnock's motion to dismiss based on his judicial immunity. The court's ruling
on Judge Brunnock's motion is the appropriate place to begin in considering
Donovan, Grove Manor and Newman's claims of quasi-judicial immunity.

The court used the established two part test for judicial immunity: judges
are not immune for acts committed either 1) beyond his or her judicial capacity or
2) in the clear absence of all jurisdiction. <u>Gross</u>, 485 F. Supp. 2d at 75 (citing
<u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57 (1978); <u>Mireles v. Waco</u>, 502 U.S. 9,

11-12 (1991)).  An action taken in the clear absence of all jurisdiction amounts to a usurpation of authority, where the judge knows the subject matter of his actions is not remotely vested by law in that judge without requiring the exercise of his discretion.  Id. at 76. (citing Stump, 435 U.S. at 356, n. 6; Bradley v. Fisher, 80 U.S. 335, 352 (1872)).  Judicial immunity recognizes that judges may make mistakes, and immunity is not removed even if a judge's actions include grave procedural errors.  Id. (citing Green v. Maraio, 722 F.2d 1013, 1017 (2d Cir. 1983); Stump, 435 U.S. at 359; Bradley, 80 U.S. at 352).  Judicial immunity is also not pierced by allegations of bad faith or malice.  Id. (citing Pierson v. Ray, 386 U.S. 547, 554 (1967); Mireles, 502 U.S. at 11-12).  The court (*Thompson, J*) found that Judge Brunnock undertook all of his actions in his judicial capacity and that he did not act in a clear absence of all jurisdiction.  Id. at 77.  Judge Brunnock was entitled to absolute judicial immunity.  Id.

Gross argued that Judge Brunnock was collaterally estopped from asserting judicial immunity because the Superior Court had already held that the Probate Court did not have jurisdiction over Gross.  The court found this argument unpersuasive.  The issue decided by the Superior Court, namely whether the Probate Court had jurisdiction over Gross, is not identical to a finding that there was a clear absence of all jurisdiction, the judicial immunity standard.  Id. at 78-79 (citing State v. Joyner, 255 Conn. 477, 490 (2001) (for "collateral estoppel to apply, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding");

<u>Corcoran v. Dep't of Soc. Servs.</u>, 271 Conn. 679, 689-90 (2005) ("Because we have recognized that applying the doctrine of collateral estoppel has harsh consequences, . . . we have been reluctant to uphold the invocation of the doctrine unless the issues are completely identical")). Further, any statement by the Superior Court regarding the extent to which the Probate Court lacked jurisdiction over Gross was not necessary to its final judgment. <u>Id.</u> (citing <u>Joyner</u>, 255 Conn. at 490 ("If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action.")).

Gross also argued that the Rooker-Feldman doctrine barred Judge Brunnock from asserting a judicial immunity defense. The court rejected that argument, noting that the Rooker-Feldman doctrine prevents a party losing in state court from seeking redress in federal court by arguing that the adverse state court judgment itself violated his rights. <u>Id.</u> at 79-80 (citing <u>Johnson v. De Grandy</u>, 512 U.S. 997, 1005-06 (1994); <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005)). The current action was not brought by a state court loser, but by Gross, the victor in Superior Court, and Judge Brunnock was not alleging that the Superior Court's ruling violated his rights. Rooker-Feldman could not apply. Moreover, the issue before the Superior Court was not the same issue presented for this court's decision.

### 1. Donovan's Immunity

Donovan's argument to extend Judge Brunnock's judicial immunity to her

actions is a simple one as the law is clear and well established.  Donovan was acting as an agent of the Probate Court, at the direction and under the supervision of Judge Brunnock.  If Judge Brunnock is immune from suit, than Donovan as conservator acting as his agent or at his direction must be immune.

"The power to appoint a conservator of a person incapable of managing his own affairs is vested in the Probate Court."  <u>Elmendorf v. Poprocki</u>, 155 Conn. 115, 118 (Conn. 1967).  "The performance of all of the conservator's official duties comes under the supervision and control of the Probate Court."  <u>Marshall v. Kleinman</u>, 186 Conn. 67, 69 (Conn. 1982).  "The Probate Court is under an affirmative duty to protect the assets of an incompetent's estate.  The court, and not the conservator, is primarily entrusted with the care and management of the ward's estate, and, in many respects, the conservator is but the agent of the court."  <u>Appeal from Probate of Marcus</u>, 199 Conn. 524, 529 (Conn. 1986).  This court has found that a conservator acting as the agent of the Probate Court which is immune from suit, is also within the protection of judicial immunity.  <u>See Collins v. W. Hartford Police Dep't</u>, 380 F. Supp. 2d 83, 90-91 (D. Conn. 2005); <u>Rzayeva v. United States</u>, 492 F. Supp. 2d 60, 88 (D. Conn. 2007).  <u>See also</u> <u>Cok v. Cosentino</u>, 876 F.2d 1 (1st Cir. 1989).

Gross concedes that if Judge Brunnock is immune then Donovan is immune, but argues for the caveat that under this scenario Donovan would still only have immunity for actions taken within her authority as conservator.  He does not adequately explain his definition of authority nor does he specifically

identify which of Donovan's actions he believes were outside the authority of a conservator.  The only case cited in support of Gross's argument is <u>Zanoni v. Hudon</u>, 48 Conn. App. 32 (Conn. App. 1998).

Gross's argument cannot defeat Donovan's quasi-judicial immunity as she was acting within her authority as conservator.  There are no allegations that Donovan acted in a manner not within the general ambit of a conservator's authority.  The statutes granting a conservator her authority support this finding as they specifically set forth the powers exercised by Donovan.  <u>See</u> Conn. Gen. Stat. § 45a-164 (conservator may sell ward's property upon approval from the Probate Court); Conn. Gen. Stat. § 45a-655(a) ("conservator shall manage all the estate and apply so much of the net income thereof, and, if necessary, any part of the principal of the property, which is required to support the ward"); Conn. Gen. Stat. § 45a-656(a) (conservator's duties include: "1) The duty and responsibility for the general custody of the respondent; . . . 3) the power to give consent for his or her medical or other professional care, counsel, treatment or service; 4) the duty to provide for the care, comfort and maintenance of the ward; 5) the duty to take reasonable care of the respondent's personal effects"); Conn. Gen. Stat. § 45a-656(c) (conservator has power to place ward in long-term care institution).  Gross cannot and does not show that Donovan's actions fall outside the scope of her statutory authority.

A majority of Donovan's actions as alleged were explicitly approved by Judge Brunnock, namely the offer of sale on his property, disbursement of funds

to cover expenses and fees, and the restrictions placed on King's visitations. The placement of Gross in Grove Manor and returning him to Connecticut from New York after his visit were not pled with sufficient particularity to know whether Judge Brunnock approved those actions prior to their occurrence. However, they were undertaken at a minimum with the knowledge of and in conjunction with the Probate Court, proven through Judge Brunnock's related orders restricting visitation rights at Grove Manor and approving disbursements of funds to pay the nursing home and the transport ambulance, and by Donovan's fax informing Judge Brunnock she and Social Services were coordinating Gross's return to Connecticut from New York.

Finally, Zanoni dealt with a conservator's authority to enter into binding contracts involving the sale of the ward's real property without Probate Court approval. Zanoni, 48 Conn. App. at 36-37. By statute, the Probate Court must approve the sale of the ward's real property. See Conn. Gen. Stat. § 45a-164. Completing such a transaction without the Probate Court's approval would clearly be ultra vires and is patently distinguishable from the allegations against Donovan.

Gross re-asserts the collateral estoppel and Rooker-Feldman doctrine arguments he employed in opposing Judge Brunnock's motion to dismiss, without deviation. Those arguments do not prevent Donovan from asserting quasi-judicial immunity for the same reasons they did not bar Judge Brunnock's immunity, as explained above.

Donovan is shielded from suit by quasi-judicial immunity.  She acted within her authority as conservator and under the supervision and direction of Judge Brunnock.  As Judge Brunnock's actions were absolutely immune from suit, Donovan's actions fall within the same protections and are also immune.  Donnovan's motion to dismiss is GRANTED.

### 2.  Grove Manor's Immunity

Grove Manor's assertion of quasi-judicial immunity is derivative of Judge Brunnock and Donovan's immunity.  Grove Manor claims that at all times it was carrying out Judge Brunnock's valid court orders, at times disseminated by Donovan, and is entitled to an extension of their immunity.  Gross eloquently refers to Grove Manor's position as "the Nuremberg Defense," referencing the defense asserted by Nazis that they were following orders and therefore should not be held responsible for their genocidal conduct.  He does not adequately argue the merits of the defense as a matter of law or analogous facts.

Non-judicial figures are entitled to quasi-judicial immunity if their actions may be considered judicial in nature.  <u>See</u> <u>Dorman v. Higgins</u>, 821 F.2d 133, 136 (2d Cir. 1987).  In determining whether a defendant is entitled to quasi-judicial immunity courts employ a functional approach.  <u>Forrester v. White</u>, 484 U.S. 219, 224 (1988).  This approach "looks to the nature of the function performed, not the identity of the actor who performed it."  <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 268 (1993) (internal quotation omitted).

The function of enforcing a facially valid court order is clearly judicial in

nature, and a person directed by the court to act is entitled to quasi-judicial immunity.  See Bush v. Rauch, 38 F.3d 842, 847-48 (6th Cir. 1994) (citing cases from the Fifth, Seventh, Eight and Ninth Circuit); Mays v. Sudderth, 97 F.3d 107, 112-13 (5th Cir. 1996); Valdez v. Denver, 878 F.2d 1285, 1288 (10th Cir. 1989); Tornheim v. Eason, 363 F. Supp. 2d 674, 677 (S.D.N.Y. 2005); Maldanado v. N.Y. County Sherriff, 2006 U.S. Dist. Lexis 64391 at *15-17 (S.D.N.Y. Sep. 6, 2006).  The policy reasons for extending judicial immunity to those directly ordered to act by an immune judge are clear.  "Enforcing a court order or judgment is intrinsically associated with a judicial proceeding."  Valdez, 878 F.2d at 1288.  The execution of a valid court order without fear of reprisal is necessary for the court's authority and ability to function.  Mays, 97 F.3d at 112.  It would be illogical to grant immunity to a judge in issuing an order and then hold the person entrusted with enforcing the same order liable for not questioning the judge's findings.  Bush, 38 F.3d at 848.  Such a result equates to a collateral attack on the court's order. Id.

Gross alleges that Grove Manor accepted him as a patient, was paid for its services,[2] restricted King's visitation rights, and boarded him with an abusive roommate.  Judge Brunnock ordered Gross be placed in a nursing home, issued an order approving the disbursement of Gross's assets to cover his costs of living and ordered the restrictions placed on King's visitation rights.  An order of

---

[2]Gross does not allege that Grove Manor committed fraud in charging its fees, misappropriated his funds or falsified its accounting to inflate its fees. Gross simply does not want to pay the facially appropriate fees.

the Probate Court is required by statute before a ward may be placed in a long-term care facility. See Conn. Gen. Stat. § 45a-656(c). As noted above, Judge Brunnock has absolute judicial immunity in this case. Grove Manor's acceptance of Gross as a resident, acceptance of fees and restriction of King's visitations are protected by quasi-judicial immunity because they are merely acts of compliance with facially valid court orders.

The court does not find it appropriate to extend quasi-judicial immunity to Grove Manor regarding its decision to assign Gross to room with or its supervision of Gross's interactions with an abusive roommate. There is no evidence that Judge Brunnock issued any orders with the specificity required to dictate Gross's specific living situation, nor is it reasonable to assume that the Probate Court would issue such an order. The complaint alleges that Donovan knew of the altercation between Gross and his roommate. The knowledge of a court appointed conservator is insufficient to support a claim of quasi-judicial immunity. Such an application of immunity would render every individual who interacted with a conservator immune from suit for the consequences of their actions. That result is inimical to conservatorship. Judicial immunity should not extend to enforcing a court order in an improper manner or in such a way as to exceed the bounds of that order and obviate its purpose. See Levine v. Lawrence, 2005 U.S. Dist. Lexis 11663 at * 29-31 (E.D.N.Y. Jun. 15, 2005). The court confines Grove Manor's quasi-judicial immunity to its actions in compliance with direct orders of the Probate Court.

Similar to his collateral estoppel argument, discussed above, Gross argues that the Superior Court's finding that the Probate Court lacked jurisdiction prevents Grove Manor from asserting the defense of quasi-judicial immunity based on Judge Brunnock or Donovan's immunity through the law-of-the-case doctrine. The law-of-the-case doctrine is applicable in two circumstances. First, a trial court may not reconsider or modify any of its prior decisions that have been ruled on by an appellate court in the same case. See Burrell v. United States, 467 F.3d 160, 165 (2d Cir. 2006). "[I]f an issue was not part of the appellate decision, a trial court may consider the matter." Id. Second, a court should not reconsider its own decision within the same case without an intervening ruling on the same issue by a higher court. See United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002). This second branch of the law-of-the-case doctrine "counsels against revisiting our prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." United States v. Thorn, 446 F.3d 378, 383 (2d Cir. 2006) (internal quotation omitted).

The first branch of the law-of-the-case doctrine, regarding intervention by an appellate court, does not apply to the current case for three reasons. First, the Superior Court's ruling was in a wholly separate case from the current one, and its ruling is not the law of this case. Second, decisions of the federal district court are not appealed to the Superior Court, and the Superior Court's rulings are

not binding on this court. Third, as discussed above regarding collateral estoppel, there is no identity between this court's application of the clear absence of all jurisdiction standard and the Superior Court's finding a lack of jurisdiction.

The second branch of the law-of-the-case doctrine does apply in this case, but not in a manner beneficial to Gross. This court has found that Judge Brunnock did not act in a clear absence of all jurisdiction and that Judge Brunnock and Donovan are protected by judicial immunity. Gross has not offered any newly available evidence or pointed to a change in controlling law that would cause the court to reverse its own findings. That Judge Brunnock has absolute judicial immunity and Donovan has quasi-judicial immunity is the law of this case, and supports a finding that Grove Manor is immune.

Grove Manor is entitled to quasi-judicial immunity for actions in compliance with specific court orders. It is not entitled to immunity for every action taken, in particular it is not immune from suit for its discretionary application of Judge Brunnock's orders. The motion to dismiss is GRANTED as to the section 1985 claims, and DENIED as to the OBRA, Patient's Bill of Rights and intentional and negligent infliction of emotional distress claims, as the allegations regarding his abusive roommate are used in support of only the later.

### 3. Newman's Immunity

Newman seeks to apply the functional approach to quasi-judicial immunity to attorneys appointed by the Probate Court pursuant to Connecticut General

Statutes § 45a-649.  That statute authorizes the Probate Court to appoint an attorney to act on behalf of the subject of a petition for involuntary appointment of a conservator.  Conn. Gen. Stat. § 45a-649(b).

The Connecticut Supreme Court recently considered a similar issue in Carrubba v. Moskowitz, 274 Conn. 533 (Conn. 2005).  In that case, absolute quasi-judicial immunity was extended to an attorney serving as court appointed counsel for a minor.  After conducting the functional analysis, the court found that an attorney acting on behalf of a minor played dual roles:  1) as advocate for the incompetent persons; and 2) as a functionary arm of the court, making the performance of his duties judicial in nature.  Id. at 544-45.  A court appointed attorney serving on behalf of a client incapable of acting in his own best interest is appointed by and serves at the discretion of the court.  Id.  The attorney not only advocates the wishes of his client, but is also responsible for acting in his client's best interest.  This second obligation is paramount even when directly contravened by his client's wishes.  Id.  The court also noted that court appointed attorneys for client's with diminished capacities faced a heightened threat of retaliatory litigation, and that adequate procedural safeguards exist to challenge the attorney's actions.  Id. at 543.

An attorney appointed by the Probate Court under section 45a-649 for an incompetent adult is analogous to an attorney appointed to act on behalf of a minor.  Under that section, the Probate Court may only appoint counsel upon an application for *involuntary* appointment of a conservator.  The attorney serves at

17

the behest of the court to protect the interests of a client whose capacity to manage his own affairs has been independently called into question.

While Gross asserts six claims against Newman, all of those claims are supported by one factual allegation: Newman did not oppose the appointment of a conservator at Gross's request. Newman's decision on whether to oppose the appointment of a conservator in the instant case is judicial in nature. He was asked by the court to protect the interests of a client whose capacity had been called into question. It would be inappropriate to force an attorney appointed by the Probate Court to strictly follow the instructions of a client that may not be able to manage his own affairs. To do so could potentially require an attorney to adhere to the whims of a client that, much like the child in <u>Carrubba</u>, did not have the ability or foresight to protect their own interests. As stated in <u>Carrubba</u>, the best interests of the client trumps the client's wishes.

The procedure for appointment of a conservator is also germane to the court's inquiry. A conservator can only be appointed by the Probate Court after an evidentiary hearing. Conn. Gen. Stat. § 45a-650(a). Such evidence shall include a written report or testimony of a medical professional who has examined Gross within the previous thirty days. <u>Id.</u> The Probate Court is also required to serve notice of the hearing on Gross's immediate family members, the individual who requested appointment of the conservator, and the Commissioner of Social Services. Conn. Gen. Stat. § 45a-649(a). The individual who requested appointment of a conservator for Gross was served with notice of hearing. There

are no allegations that Gross's immediate family or the Commissioner of Social Services was not served with the notice of hearing.

Newman's involvement in the Probate Court's appointment of Donovan as conservator was within his statutory authority and completed in a professionally responsible manner. He discharged his due diligence duty before recommending the appointment of a conservator for Gross. He reviewed the relevant evidence and determined a conservatorship was in Gross's best interest, despite his protestations. This is the exact same analysis that the Probate Court is required to undertake and is judicial in nature. Based on his findings, Newman had a duty to recommend appointment of a conservator. The Connecticut Rules of Professional Conduct compel an attorney to petition the appropriate entity for appointment of a conservator when he reasonably believes the client is of a diminished capacity. <u>See</u> Conn. R. Prof. Conduct § 1.14(b). In doing so, he acted as an arm of the court and conducted the judicial task of independently evaluating the evidence and acting in the best interests of a client with diminished capacity. Such actions are entitled to absolute quasi-judicial immunity. <u>See</u> <u>Dorman</u>, 821 F.2d at 136-38 (probation officers entitled to quasi-judicial immunity for preparation of pre-sentence reports). To hold otherwise would expose Newman and like attorneys to an onslaught of civil lawsuits. Gross, King, the medical professionals who came in contact with Gross or Social Services could have objected to or appealed the conservatorship. They did not.

Gross argues that Newman cannot assert quasi-judicial immunity based of

the theory of collateral estoppel and the law-of-the-case doctrine.  For the reasons articulated above, those arguments are not persuasive and Newman is entitled to immunity.  The motion to dismiss is GRANTED.

## B.  Remaining Claims Against Grove Manor

Four claims against Grove Manor in the complaint survive an application of its quasi-judicial immunity: 1) violation of OBRA; 2) violation of the Connecticut Patient's Bill of Rights; 3) intentional infliction of emotional distress; and 4) negligent infliction of emotional distress.  Grove Manor briefed the OBRA and Patient's Bill of Rights claims at length in its motion to dismiss.  Gross chose not to respond to its arguments as to those two claims in any way.[3]  The court considers Gross's silence to be a waiver of those claims.   The motion insofar as it seeks dismissal of the OBRA and Patient's Bill of Rights claims is GRANTED.

In addition to the OBRA and the Patient's Bill of Rights claims, Grove Manor's motion seeks dismissal of Gross's intentional infliction of emotional distress claim.  It argues that the facts alleged are not as a matter of law so extreme as to constitute an intentional infliction of emotional distress and must

_____

[3]On page eight, paragraph five, of his opposition to Grove Manor's motion to dismiss, [Doc. #51] Gross notes that certain paragraphs of the complaint are incorporated into his OBRA and Patient's Bill of Rights claims.  He did so in support of his intentional infliction of emotional distress claim, discussing a Connecticut Supreme Court case dealing with intentional infliction of emotional distress and making no reference to OBRA or the Patient's Bill of Rights, and applies the facts mentioned to the extreme and outrageous standard for intentional infliction of emotional distress.  Gross in no way treats the merits of his OBRA and Patient's Bill of Rights claims, nor does he discuss the status of the law in those two areas.

be dismissed.

To state a claim for intentional infliction of emotional distress, Gross must plead facts alleging:  "1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; 2) that the conduct was extreme and outrageous; 3) that the defendant's conduct was the cause of the plaintiff's distress; and 4) that the emotional distress sustained by the plaintiff was severe."  <u>Petyan v. Ellis</u>, 200 Conn. 243, 253 (Conn. 1986).

The court cannot at this time say that King can prove no set of facts consistent with allegations regarding the assignment of Gross's roommate and subsequent assault that could be considered extreme and outrageous.  It may well be that the allegations do not amount to intentional or negligent infliction of emotional distress upon the revelations of discovery.  However, a decision as to the extremity of Grove Manor's conduct would be premature at this early phase of the proceedings.  The motion to dismiss is GRANTED as to the OBRA and Patient's Bill of Rights claims, and DENIED as to the intentional infliction of emotional distress and negligent infliction of emotional distress claims.

## IV.  Conclusion

Based on the foregoing, Donovan and Newman's motions to dismiss are GRANTED, as they are entitled to quasi-judicial immunity for acting in a functionally judicial manner.  Grove Manor's motion is GRANTED as to the civil rights claims, and violations of OBRA and the Patient's Bill of Rights.  Grove

Manor's motion is DENIED as to the intentional infliction of emotional distress and negligent infliction of emotional distress claims.

The clerk shall terminate Kathleen Donovan and Jonathan Newman as defendants to this action.

IT IS SO ORDERED.


_____/s/_____

Vanessa L. Bryant

United States District Judge


Dated at Hartford, Connecticut:  March 24, 2008.